UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 01-7310-CIV-JORDAN



ACCESS FOR THE DISABLED, INC. and )
ROBERT COHEN )
           )
        Plaintiff )
           )
vs. )
           )
GARY V. CAPLAN, TRUSTEE. )
           )
        Defendant )
_____ )

### ORDER GRANTING IN PART AND DENYING IN PART SUMMARY JUDGMENT

Access for the Disabled, Inc. and Robert Cohen sued Gary Caplan, as trustee, for disability discrimination in violation of Title III of the Americans with Disabilities Act. The plaintiffs claim that, due to physical barriers, they are denied access to the full enjoyment of the facilities at Central Medical Plaza, which the defendant owns. Mr. Caplan moved for summary judgment [D.E. 18] on all counts of the complaint. For the reasons stated below, the motion for summary judgment is GRANTED in part and DENIED in part.

### I. SUMMARY JUDGMENT STANDARD

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A material fact is one that might affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where the non-moving party fails to prove an essential element of its case for which it has the burden of proof at trial, summary judgment is warranted. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Hilburn v. Murata Elecs. North Am., Inc.*, 181 F.3d 1220, 1225 (11th Cir. 1999).

## II. RELEVANT FACTS[1]

Gary Caplan, as trustee, owns the Central Medical Plaza, a two story office building constructed prior to the enactment of the Americans with Disabilities Act. *See* Affidavit of Robert Elimeleck at ¶ 3. The Medical Plaza is located near a hospital, and its tenants are involved in the health care field. *See id.* The Medical Plaza has 244 parking spaces, seven of which are reserved for persons with disabilities. *See id.* at ¶ 5. Mr. Caplan has made various improvements to the property in order to make it more accessible to disabled persons. *See id.* at ¶ 4. For instance, he has added additional parking for disabled persons, installed new signs, lowered the shelf height of the pay telephones, installed levered handles on doors, installed strobe fire alarms, modified restrooms, and installed automatic doors. *See id.* In December of 2001, Mr. Caplan submitted plans to the City of Coral Springs to modify the parking once again. *See id.* at ¶ 5. He is still awaiting approval. *See id.* The Central Medical Plaza requires each tenant to maintain a policy regarding accommodation of visitors with disabilities. *See id.* at ¶ 6.

Access for the Disabled is a non-profit Florida corporation. Its purpose is to represent its members' interests by assuring that places of public accommodation are accessible to and usable by the disabled. *See* Complaint at ¶ 3. Robert Cohen is a member of Access for the Disabled. He uses a wheelchair for mobility purposes and is limited in his ability to walk, stand, grab, grasp, and pinch. *See id.* at ¶ 2. Mr. Cohen has attempted to access the Central Medical Plaza, and intends to visit it again in the future. *See id.* at ¶¶ 13-14.

## III. ANALYSIS

Mr. Caplan makes various arguments in support of his motion for summary judgment. First, he contends that Access for the Disabled lacks standing to assert this ADA claim on behalf of its members. He also contends that Mr. Cohen lacks standing to assert claims for violations unrelated to his disability. Mr. Caplan argues that the plaintiffs have failed to meet their burden of showing that the removal of barriers is readily achievable, and that he has substantially complied with the ADAAG requirements. Finally, Mr. Caplan asserts that since plans to remedy some of the violations are pending, he is not liable for the plaintiffs' claims dealing with those violations.

---

[1] Under Local Rule 7.5, all material facts set forth in the statement served by the moving party are deemed admitted unless controverted by the opposing party's statement. Where a conflict exists, the facts are construed in favor of the plaintiffs.

## A. STANDING

Mr. Caplan initially contends that Access for the Disabled lacks standing to pursue this action. The Supreme Court has set forth a three-prong test to determine whether an association has standing. An association can bring a claim on behalf of its members when (1) its members would otherwise have standing to sue in their own right; (2) the interests it seeks to protect are germane to the organization's purpose; and (3) neither the claim asserted nor the relief requested requires participation of individual members in the lawsuit. *See Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977). Access for the Disabled satisfies the first two prongs. Its members, disabled individuals, would have standing, and its stated purpose is to protect the interests at stake in this lawsuit. Mr. Caplan argues, however, that Access for the Disabled fails to satisfy the third prong of the *Hunt* test.

Mr. Caplan contends that an ADA lawsuit, by its nature, requires that the actual injured parties be involved in the lawsuit. Specifically, Mr. Caplan cites two Southern District of Florida ADA cases where the court found an associational plaintiff, like Access for the Disabled, failed to satisfy the third prong of the associational standing test. *See Concerned Parents to Save Dreher Park Center v. City of West Palm Beach*, 884 F. Supp. 487, 488-89 (S.D. Fla. 1994) (holding that associational plaintiff "cannot meet the third prong because any finding of an ADA violation requires proof as to each individual claimant."); *Association for Disabled Americans, Inc. v. Concorde Gaming Corp.*, 158 F. Supp.2d 1353, 1363-64 (S.D. Fla. 2001) (quoting *Concerned Parents*, 884 F. Supp. at 488).

While I recognize the cases cited by Mr. Caplan, no binding case law or ADA statutory authority supports his argument. Indeed, the Eleventh Circuit has held that the third prong of the associational standing test is not a constitutional requirement, but a prudential concern focusing on "matters of administrative efficiency, not on elements of a case and controversy within the meaning of the Constitution." *Doe v. Stincer*, 175 F.3d 879, 882-83 (11th Cir. 1999). Recent Southern District cases applying *Doe* have concluded that associational plaintiffs have standing under the ADA. *See Access for the Disabled, Inc. v. Segall*, No. 01-7587-Civ-Ferguson at *5 (S.D. Fla. Feb. 28, 2002) (D.E. 15); *Access for the Disabled, Inc. v. Splitting Ates, Inc.*, No. 01-7209-Civ-Dimitrouleas at *2-3 (S.D. Fla. Nov. 28, 2001) (D.E. 17). I agree with the reasoning of those cases concluding that standing exists.

Mr. Caplan argues that even if Access for the Disabled has standing, Mr. Cohen lacks standing to assert claims for access violations that do not relate to his disability. Mr. Cohen uses a wheelchair for mobility. The plaintiffs' expert, however, cites ADAAG violations dealing with hearing and visual

3

impairments. In support of this position, Mr. Caplan cites *Access Now, Inc. v. South Florida Stadium Corp.*, 161 F. Supp.2d 1357 (S.D. Fla. 2001). There the court held that a mobility impaired plaintiff had no standing to complain about discrimination against blind and deaf persons. *Id.* at 1364. The plaintiffs, however, contend that since they have alleged that Access for the Disabled has members with these impairments, the association has standing to make the discrimination claims relating to hearing and visual impairments. *See Access 4 All, Inc. v. Floyd Investments, Ltd.*, No. 02-14076-Civ-Paine at *4 (S.D. Fla. May 9, 2002) (D.E. 18).

Judge Paine, in *Floyd*, found that an associational plaintiff alleging a wide variety of impairments among its members had standing to assert claims unrelated to the disability of the named plaintiff. *Id.* The standing issue in that case was raised on a motion to dismiss for failure to state a claim. When the standing issue is raised at the summary judgment stage, however, "the plaintiff can no longer rest on 'mere allegations.'" *Bischoff v. Osceola County*, 222 F.3d 874, 878 (11th Cir. 2000). The plaintiff must set forth, by affidavit, specific facts tending to show that it has standing. *Id.* Here, the mere allegations that Access for the Disabled has members with visual and hearing impairments is insufficient to support standing at the summary judgment stage. Accordingly, Mr. Caplan is entitled to summary judgment on all the discrimination claims not relating to barriers to the mobility impaired.

## B.  PLAINTIFFS' BURDEN

Mr. Caplan next contends that the plaintiffs have failed to carry their burden of showing that removal of the barriers to access is readily achievable. To properly address this issue, I will first briefly discuss claims under the ADA.

Title III of the ADA prohibits discrimination against persons with disabilities in places of public accommodation. *See* 42 U.S.C. § 12182(a). It provides for preventative injunctive relief for "any person who is being subjected to discrimination on the basis of disability in violation of [Title III]." § 12188(a)(1); § 2000a-3(a). The ADA prohibits discrimination "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." § 12182(a). "Discrimination" under Title III specifically includes a "failure

4

to remove architectural barriers . . . in existing facilities . . . where such removal is readily achievable."
§ 12182(2)(A)(iv).[2]

The ADA defines "readily achievable" as "easily accomplishable and able to be carried out without much difficulty or expense." § 12181(9). The Act fails to discuss, however, who bears the burden of proving that removal of a barrier is readily achievable. Although the parties have spent a great deal of energy wrangling over what the proper method of allocating the burden should be, in general terms they actually agree. No Eleventh Circuit case has expressly addressed this issue, but most courts have concluded that a plaintiff seeking relief under the ADA for removal of architectural barriers bears at least the initial burden of showing that the removal is readily achievable. For instance, the Tenth Circuit, in *Colorado Cross Disability Coalition v. Hermanson Family, Ltd.*, 264 F.3d 999 (10th Cir. 2001), held that a plaintiff "must initially present evidence tending to show that the suggested removal is readily achievable under the particular circumstances. If plaintiff does so, defendant then bears the ultimate burden of persuasion that the barrier removal is not readily achievable . . ." *Id.* at 1002-03 (adopting *Pascuiti v. New York Yankees*, No. 98 Civ. 8186(SAS), 1999 WL 1102748 at *1 (S.D.N.Y. Dec. 6, 1999)).

The Fifth Circuit has held that

> [t]he plaintiff has the burden of proving that a modification was requested and that the requested modification is reasonable. The plaintiff meets this burden by introducing evidence that the requested modification is reasonable in the general sense, that is, reasonable in the run of the cases. While the defendant may introduce evidence indicating that the plaintiff's requested modification is not reasonable in the run of the cases, the plaintiff bears the ultimate burden of proof on the issue.

---

[2] The Central Medical Plaza was constructed before the enactment of Title III of the ADA. It is, therefore, considered an "existing facility" under 42 U.S.C. § 12182(2)(A)(iv). The plaintiffs contend, however, that rather than applying the readily achievable standard, I should apply the alteration standard set forth in 28 C.F.R. § 36.402. That section provides that an alteration to a public place of accommodation "shall be made so as to ensure that, to the maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities." § 36.402(a)(1). "To the maximum extent feasible" means that the owner must comply with the ADAAG requirements unless compliance would be "virtually impossible." § 36.402(c). "Alteration" is defined as changes that "affect the usability of the building or facility." § 36.402(b)(1). The flaw in the plaintiffs' argument is that the changes made at the Central Medical Plaza were simply readily achievable barrier removals that had no effect on the usability of the building. The readily achievable, and not the alteration, standard applies in this case.

*Johnson v. Gambrinus Co./Spoetzl Brewery*, 116 F.3d 1052, 1059 (5th Cir. 1997). The framework laid out in *Johnson* indicates that the plaintiff bears the ultimate burden of proof. This framework, however, is not different than the one described in *Colorado Cross*. Both place the initial burden of proof on the plaintiff, but then both indicate the defendant bears the burden of persuasion.

Two Southern District of Florida cases have adopted the framework proposed in *Johnson* in analyzing barrier removal claims. *See South Florida Stadium*, 161 F. Supp.2d at 1363; *Concorde Gaming*, 158 F. Supp. 2d at 1363. The court in *South Florida Stadium*, stating that it was adopting *Johnson*, and citing to *Colorado Cross*, held that the plaintiff must make an initial showing that a barrier removal is readily achievable, and then the defendant has the opportunity to rebut by showing that removal could not be accomplished without much difficulty or expense. *See South Florida Stadium*, 161 F. Supp.2d at 1363. The court went on to note that "defendants bear the burden of persuading the court that the plaintiff's requested modification is not readily achievable." *Id*. The decision appears to indicate, and I agree, that the *Johnson* and *Colorado Cross* tests are functionally indistinguishable.

Mr. Caplan concedes that he bears the ultimate burden. In his reply, he states that the plaintiffs' obligation is to "identify barriers to access and propose readily achievable barrier removals. If plaintiff does so, it is defendant's burden to show the barrier removals are not readily achievable. Defendant does not seek to shift the burden of proof to plaintiff's but to have plaintiffs meet their initial burden." Reply at 3.

In light of Mr. Caplan's position and the similarity of the two frameworks, I find that the plaintiffs must initially present evidence to show that the suggested barrier removal is readily achievable. Once that initial burden is met, Mr. Caplan bears the ultimate burden of persuasion that the removal is not readily achievable.

## C.  APPLICATION

The plaintiffs have met their initial burden of showing that their proposed barrier removals are readily achievable. They submitted an expert report detailing the violations at the Central Medical Plaza.[3] For each violation listed, the report contains specific recommendations for removal,

---

[3] Mr. Caplan asserts that I should strike the plaintiffs' expert witness report as untimely. The scheduling order in this case required the parties to exchange expert witness summaries and reports by November 1, 2001. The plaintiffs did not serve this version of their report until January 29, 2002.

outlining the method and cost of implementation. For example, after noting that there is no accessible route from the street or the public sidewalk, the report states that "[t]he cost to remove the barrier identified in paragraph 1 by installing a concrete path at the planter which is 5' wide and to add striping to the building is $500.00." Affidavit of Thomas Ricci at 4.

To meet its burden, a plaintiff must introduce evidence that a specific design is readily achievable and provide price cost estimates for the design. *See Colorado Cross*, 264 F.3d at 1009; *South Florida Stadium*, 161 F. Supp.2d at 1371 (finding that where plaintiff concludes, without discussion, that a speculative plan is readily achievable, he has failed to meet his initial burden). *See also Johnson*, 116 F.3d at 1363 (holding that plaintiff met his burden by simply introducing the DOJ's regulation and commentary stating that the requested modification was reasonable). The plaintiffs, for each violation, have provided a specific plan which is readily achievable and a precise cost estimate. They, therefore, have satisfied their initial burden.

Mr. Caplan, on the other hand, has introduced no evidence to show that the plaintiffs' proposed plans are not readily achievable. He has, therefore, not sufficiently rebutted the plaintiffs' evidence that the barriers are readily achievable. Accordingly, Mr. Caplan's motion for summary judgment on this issue must be denied.

### D. MOOTNESS AND SUBSTANTIAL COMPLIANCE

Mr. Caplan argues that because he has undertaken steps to remove barriers to access at the Central Medical Plaza, the plaintiffs' claims are moot and should be dismissed. Mr. Caplan has submitted architectural plans to the City of Coral Springs that would bring the parking lot into compliance. A claim for injunctive relief, however, is moot only if "it is absolutely clear that the allegedly wrongful behavior could not reasonably be expected to occur," and "a defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is

---

The plaintiffs argue that the later report was in response to Mr. Caplan's expert witness report which made reference to changes in the property. They also contend that Mr. Caplan's counsel did not reasonably accommodate their requests to inspect the property. While I understand Mr. Caplan's contention, I exercise my discretion to not strike the expert report. *See Goulah v. Ford Motor Co.*, 118 F.3d 1478, 1483 (11th Cir. 1997). If Mr. Caplan chooses to depose the plaintiffs' expert on the new report, the plaintiffs will have to pay the expert fees associated with the deposition. Any such deposition must be taken by October 15, 2002.

absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 190 (2000).

The submission of plans for construction at some future undetermined date is insufficient to satisfy Mr. Caplan's "formidable burden." It is unclear whether the city will approve the plans – they were submitted nine months ago – and even if they are approved, there is no guarantee Mr. Caplan will implement them. The plaintiffs also contend that the plans, even if implemented, would not bring the parking lot in compliance. Accordingly, the claims asserted by the plaintiffs are not moot.

Finally, Mr. Caplan contends that he is in substantial compliance with the ADAAG requirements. He notes the small difference between the parameters set forth in the ADAAG and the actual condition of the property. Mr. Caplan cites no authority in support of his argument. The plaintiffs, however, point to *Access Now, Inc. v. Ambulatory Surgery Center Group, Ltd.*, 2001 WL 617529 (S.D. Fla. May 2, 2001). In that case, Magistrate Judge Garber analyzed evidence of dimensional tolerances from a widely accepted and adopted national standard in accessibility. After comparing the standard to the condition of the alleged violations, Judge Garber held that the defendant was in substantial compliance. *See id.* at *12-13. Mr. Caplan has presented no standard, or any other authority, suggesting that the property at issue in this case is within industry accepted dimensional tolerances. I will not, therefore, enter summary judgment based on his contention that Central Medical Plaza is in substantial compliance with the ADAAG requirements.

## IV. CONCLUSION

For the reasons stated above, Mr. Caplan's motion for summary judgment [D.E. 18] is GRANTED with respect to the discrimination claims not involving barriers to persons with mobility impairments, and DENIED with respect to all other claims. Mr. Caplan has until October 15, 2002, to depose the plaintiffs' expert and designate his rebuttal expert.

This case is set for trial during the Court's two-week trial calendar beginning on December 16, 2002. Calendar call will be held at 9 a.m. on December 10, 2002.

DONE and ORDERED in chambers in Miami, Florida, this __16th__ day of September, 2002.

_____
Adalberto Jordan
United States District Judge

Copies to:    All counsel of record.

9